**VIGILANTES, INC. and Angel L. Pedrosa, Petitioners,**

**v.**

**ADMINISTRATOR, WAGE AND HOUR DIVISION, UNITED STATES DEPARTMENT OF LABOR; Secretary, United States Department of Labor, Respondents.**

**Civ. No. 88–1821 (JAF).**

United States District Court, D. Puerto Rico.

July 16, 1991.

---

58

Daniel R. Dominguez, Dominguez & Totti, San Juan, Puerto Rico, George E. Cranwell, Cranwell & O'Connell, Arlington, Va., for petitioners.

Linda Carol Arnold, U.S. Dept. of Labor, Washington, D.C., for respondents.

## OPINION AND ORDER

FUSTE, District Judge.

Petitioners Vigilantes, Inc. ("Vigilantes") and Angel L. Pedrosa, founder and president of Vigilantes, filed this action against respondent officials of the United States Department of Labor ("DOL") seeking review and an order revoking a Final Decision and Order of the Deputy Secretary of Labor ("Deputy Secretary") issued on August 2, 1988, as amended on September 6, 1988. Specifically, petitioners seek to revoke both the Deputy Secretary's determination that petitioners were bound by their predecessor's Collective Bargaining Agreement ("CBA") and his order of debarment pursuant to section 5(a) of the McNamara–O'Hara Service Contract Act of 1965 ("SCA"), as amended, 41 U.S.C. § 354(a), on the grounds that these determinations were arbitrary, capricious and not supported by substantial evidence on the record as a whole. Jurisdiction is based on the Administrative Procedure Act ("APA"), 5 U.S.C. § 703, and 28 U.S.C. § 1331 (federal question). This action is before the court on cross-motions for summary judgment. After reviewing the administrative record, we conclude that the Deputy Secre-

tary's fact determinations are supported by a preponderance of the evidence and his conclusions of law are not arbitrary or capricious and, therefore, grant respondents' motion for summary judgment. Accordingly, we deny petitioners' summary judgment motion and dismiss their petition.

## I.

### Prior Administrative Proceedings

The administrative record in this case includes twenty-five volumes of documents, transcripts and exhibits. Because petitioners have raised only two issues for federal court review, that is, liability based on a predecessor CBA and the appropriateness of debarment for the violations found by the Secretary, our review of the administrative record will be limited to the discussion of these two issues.[1] Reference will be made both to the decision of the Administrative Law Judge ("ALJ") dated October 16, 1986 and the August 1988 Final Decision and Order. (Docket Document No. 2, *Exhibits A and B*).

### A. Predecessor Collective Bargaining Agreement

After qualifying as a minority contractor under section 8(a) of the Small Business Act of 1958 ("SBA"), as amended, 15 U.S.C. § 637(a), petitioners were awarded security guard service contracts with the Federal Aviation Administration ("FAA") and the General Services Administration ("GSA") in Puerto Rico and the United States Virgin Islands. The SCA imposes certain requirements on prospective contractors. Section 4(c) provides:

No contractor or subcontractor under a contract, which succeeds a contract subject to this Chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe

---

1. The Administrative Law Judge ("ALJ") found petitioners liable for employee overtime and holiday pay, recordkeeping and accounting errors with respect to minimum wage and fringe

benefit payments and, in certain cases, reimbursement payments for weapons licenses and renewals.

benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: *Provided,* That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar to the locality.

41 U.S.C. § 353(c).

The ALJ found that, prior to October 1, 1977, the commencement date for petitioners' contract at the FAA installation, Honor Guard Security Services ("Honor Guard"), a subsidiary of Chemical Technology, Inc., had been supplying security guard services at the installation. This predecessor contractor had been party to a CBA with the Industrial, Technical and Professional Employees Division of the National Maritime Union of America, AFL–CIO ("the Union"). The ALJ then found that Honor Guard, while having notice well in advance that their contract was going to be awarded to a section 8(a) minority contractor, had entered into a supplemental agreement with the Union which provided for the payment of wages at $3.20 per hour, as well as substantial fringe benefits. The ALJ noted that, while reference to a pre-existing CBA was made in the *Award of Contract* (Vol. 7, Tab 21, *Special Provisions,* Clause XXIII at 16),[2] neither the CBA nor the supplemental agreement were attached to the *Award of Contract.* Instead, attached to the agreement was an incorrect wage determination, setting the minimum wage at $2.45 per hour. The ALJ concluded that the CBA and the supplemental agreement were not negotiated at arm's-length. He cited both the apparent lack of concern shown by FAA and SBA officials with respect to the CBA, as well as the DOL's failure to provide a hearing to consider the arm's-length issue.

The ALJ ruled that the appropriate wage rate was $2.65, the amount found in the correct wage determination.

The Deputy Secretary reversed the ALJ's finding and ruled that petitioners' employees should have been paid at the CBA rate of $3.20 per hour for the one-year period commencing October 1, 1977 and were entitled to the fringe benefits provided for in that agreement effective October 1, 1977. The Deputy Secretary referred to the implementing regulation for section 4(c), 29 C.F.R. § 4.6(d)(2) (1977), which required the collectively-bargained rate to be paid by successive contractors *unless the Secretary* or *his authorized representative* determined that the CBA was not entered into after arm's-length negotiations. Since petitioners neither obtained nor sought such relief from the Secretary or his authorized representative, they were never relieved from the obligation to pay the wages and fringe benefits according to the terms of the prior CBA. The Deputy Secretary also noted that neither the statute nor the regulation imposed a duty upon the DOL to conduct a hearing as to the arm's-length issue.

### B. *Debarment Issue*

Section 5(a) of the SCA, as amended, 41 U.S.C. § 354(a), directs the Comptroller General to distribute a list to all government agencies giving the names of persons or firms who have violated this chapter. The statute goes on to provide:

Unless the Secretary otherwise recommends because of unusual circumstances, no contract of the United States shall be awarded to the persons or firms appearing on this list ... until three years have elapsed from the date of publication of the list containing the name of such persons or firms. Where the Secretary does not otherwise recommend because of unusual circumstances, he shall, not later than ninety days after a hearing examiner has made a finding of a violation of this chapter, forward to the Comptroller General the name of the in-

**2.** Because of the voluminous nature of the administrative record, we will cite to documents as follows: Vol. ——, Tab ——, Specific Document, Clause or ¶ (where appropriate) at *page number.*

dividual or firm found to have violated the provisions of this chapter.

41 U.S.C. § 354.

Although the ALJ found that petitioners had violated the SCA, he ruled that the violations were not the result of intentional wrongdoing on the part of petitioners. The ALJ cited their good faith efforts to correct violations "when notified of them;" reasoned that "while it is generally the obligation of the contractor to keep abreast of the requirements, in this case Respondents received contradictory, incorrect, or no information in many instances;" and noted that "[t]he contracting parties have all demonstrated confidence in the contractor by renewing contracts." (Docket Document No. 2, *Exhibit A* at 9). The ALJ decided that debarment was unwarranted.

Again, on review the Deputy Secretary reversed the ALJ and found that debarment was appropriate. The Deputy Secretary began by reviewing the regulation relating to the issue of "unusual circumstances." *See* 29 C.F.R. § 4.188(b). The regulation itself outlines the factors which the adjudicator must consider before making a finding of unusual circumstances. 29 C.F.R. § 4.188(b)(3).[3] It is the violating contractor who has the burden of establishing the existence of unusual circumstances. 29 C.F.R. § 4.188(b)(1). The Deputy Secretary found obvious culpable neglect in petitioners' failure to ascertain whether their

practices were in violation of the SCA. He also noted the various and repeated violations of the SCA, including those found by the ALJ. The Deputy Secretary concluded that, based on the record, petitioners had neither established the absence of aggravating circumstances nor the existence of prerequisites for relief as required by the regulations and therefore found no "unusual circumstances" warranting relief from the debarment sanction.

In their petition for review before this court, petitioners Pedrosa and Vigilantes challenge these two rulings by the Deputy Secretary and seek the revocation of the Secretary's Final Decision and Order.

## II.

### *Discussion*

#### A. *Federal Court Standard of Review*

As a preliminary matter, we need to be clear about the scope of federal court review in an SCA action brought pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–706. Section 4(a) of the SCA, 41 U.S.C. § 353(a), provides that sections 4 and 5 of the Walsh–Healey Act, 41 U.S.C. §§ 38 and 39, apply with respect to the Secretary's authority to enforce provisions of the Act. Under section 5, the findings of the Secretary of Labor, "if supported by the preponderance of the evidence, shall be conclusive in any court of the United States." 41 U.S.C. § 39; *see*

---

**3.** Section 4.188(b)(3) provides:

(i) The Department of Labor has developed criteria for determining when there are unusual circumstances within the meaning of the Act. See, e.g., *Washington Moving & Storage Co.*, Decision of the Assistant Secretary, SCA 68, August 16, 1973, Secretary, March 12, 1974; *Quality Maintenance Co.*, Decision of the Assistant Secretary, SCA 119, January 11, 1974. Thus, where the respondent's conduct in causing or permitting violations of the Service Contract Act provisions of the contract is willful, deliberate or of an aggravated nature or where the violations are a result of culpable conduct such as culpable neglect to ascertain whether practices are in violation, culpable disregard of whether they are in violation or not, or culpable failure to comply with recordkeeping requirements (such as falsification of records), relief from the debarment sanction cannot be in order. Furthermore, relief from debarment cannot be in order where a contractor has a history of sim-

ilar violations, where a contractor has repeatedly violated the provisions of the Act, or where previous violations were serious in nature.

(ii) A good compliance history, cooperation in the investigation, repayment of moneys due, and sufficient assurances of future compliance are general prerequisites to relief. Where these prerequisites are present and none of the aggravated circumstances in the preceding paragraph exist, a variety of factors must still be considered, including whether the contractor has previously been investigated for violations of the Act, whether the contractor has committed recordkeeping violations which impeded the investigation, whether liability was dependent upon resolution of a bona fide legal issue of doubtful certainty, the contractor's efforts to ensure compliance, the nature, extent, and seriousness of any past or present violations, including the impact of violations on unpaid employees, and whether the sums due were promptly paid.

*Federal Food Service Inc. v. Donovan,* 658 F.2d 830, 833 (D.C.Cir.1981); *Midwest Maintenance & Constr. Co. v. Vela,* 621 F.2d 1046, 1048 (10th Cir.1980). As one court has stated, "[t]he district court's scope of review is limited to the legal question whether the ALJ applied and satisfied the standard of proof required to find a violation of the Service Contract Act." *American Waste Removal Co. v. Donovan,* 748 F.2d 1406, 1408 (10th Cir.1984). Once the findings are so evaluated, our final determination must be whether the Secretary's conclusions of law are arbitrary or capricious according to the standard of 5 U.S.C. § 706.

Petitioners argue that the findings of the hearing examiner, in this case the ALJ, should be afforded great deference and his findings should be followed by this court, as opposed to the decision of the Deputy Secretary. Petitioners base their argument on the fact that the ALJ, after hearing the testimony, evaluating the credibility of witnesses and receiving the documentary evidence, was in a superior position to the Deputy Secretary vis-a-vis the evaluation of the evidence presented and therefore his determinations as to the predecessor CBA and debarment issues should be reinstated by this court.

■ As to petitioners' argument, we need not tarry long. This court is reviewing the *final decision* of the Secretary, not that of the ALJ. The regulations containing the rules of practice for the Board of Service Contract Appeals (whose functions are being performed by the Deputy Secretary in the interim until a Board is constituted, *see* 29 C.F.R. § 8.0) define the Board as an appellate body which "shall decide cases properly brought before it on the basis of all the relevant matter contained in the entire record before it." 29 C.F.R. § 8.1(d). The Board's decision must be based on a preponderance of the evidence found in the administrative record. *Id.* Also, the regulations provide for Board review of the ALJ's decision where an aggrieved party timely files a petition. 29 C.F.R. § 6.20. Petitioners claim no impropriety in the administrative proceedings.

Nor do they point to any finding or conclusion in the Deputy Secretary's decision that was based on evidentiary material outside the record. We therefore will proceed to review the agency's final decision under the "preponderance evidence" standard of the Walsh–Healey Act.

B. *Predecessor Contract Issue*

■ Reviewing the administrative record, we find that the Deputy Secretary's decision that petitioners were bound by the predecessor contract was supported by a preponderance of the evidence and was not arbitrary or capricious. The Deputy Secretary reversed the ALJ's finding that the predecessor CBA was not negotiated at arm's length. Relying on the implementing regulation, 29 C.F.R. § 4.6(d)(2) (1977), the Deputy Secretary ruled that the CBA *remained in effect* until such time that a determination would be made *by the Secretary* or *his authorized representative* as to the arm's-length issue. Since petitioners never made the required request for a hearing as to this issue, they were never relieved of the obligation to pay based on the previously negotiated CBA.

Here, we note that the ALJ's findings of fact are not in dispute. The ALJ found that the first contract indicated that a CBA existed between the predecessor contractor and the Union; that petitioner Pedrosa was aware of this CBA and the fact that the DOL's wage determination did not coincide with the terms of this agreement; and that potential liability might attach as a result of this predecessor CBA. Also, the record is clear that petitioners never sought a hearing with the DOL to determine the arm's-length issue.

The Deputy Secretary's decision to reverse is based on the ALJ's failure to consider the implementing regulation and his finding that the CBA and the supplemental agreement were not entered into at arm's-length. The Deputy Secretary concluded that the statute and the implementing regulation required that the DOL make that determination prior to the execution of the successor contract. The fact that the FAA and GSA, the government contracting

agencies, did not consider the agreements negotiated at arm's-length has no relevance. The statute and regulations required payment until such time as the "arms-length" determination was made. Since this determination was never made, the wage rates from the CBA applied.

Finding a preponderance of the evidence, we affirm the Secretary's decision.

### C. *Debarment Sanction*

■ Here, again we find the agency's final decision has adequate support in the record. The Deputy Secretary found that, along with failing to meet its responsibilities as a successor contractor, petitioners repeatedly violated numerous regulations involving the payment of overtime, holiday and vacation pay, the keeping of adequate records, and the reimbursement for firearm licenses and renewals. While the ALJ found no intentional wrongdoing, the Deputy Secretary found that the evidence established that petitioners were guilty of culpable neglect. Also, the Deputy Secretary determined that petitioners' efforts to ensure compliance with the Act were inadequate. Therefore, the Deputy Secretary ruled that, because petitioners did not meet their burden of establishing both the absence of aggravating circumstances and the existence of prerequisites for relief under 29 C.F.R. § 4.188(b)(3)(i) and (ii), there were no "unusual circumstances" to relieve petitioners from the debarment sanction.

We note that the language of section 354(a) is clear. "Unless the Secretary otherwise recommends because of unusual circumstances, no contract shall be awarded ... until three years have elapsed...." "Where the Secretary does not otherwise recommend because of unusual circumstances, he shall ... forward to the Comptroller General...." 41 U.S.C. § 354(a). As one court has recently opined, "[s]ection 354(a) is a particularly unforgiving provision of a demanding statute." *A to Z Maintenance Corp. v. Dole*, 710 F.Supp. 853, 855 (D.C.1989). The only relief from debarment available to a contractor who has violated a section of the SCA is where the contractor can establish the existence of "unusual circumstances." In order to do this, under the criteria set forth in 29 C.F.R. § 4.188(b)(3)(i), the first step is to determine the presence or absence of certain aggravating factors. Where any of these factors are found to be present, "relief from the debarment sanction cannot be in order" and the decisionmaker is not required to go any further in the "unusual circumstances" analysis.

Here, the Deputy Secretary found petitioners' failure to ascertain possible violations of the SCA constituted culpable neglect. He also found petitioners to have repeatedly violated the Act and the violations to have been serious. It is clear from the ALJ's factual findings that there were numerous violations of the Act. It is also clear that the successor contract violation was the result of petitioner Pedrosa's failure to comply with 29 C.F.R. § 4.188(b)(4) and fulfill his affirmative obligation to ensure that Vigilantes pay practices complied with the Act by seeking advice from the DOL. As to the repeated violations, the administrative record reveals that petitioners were investigated in 1978. They then had a DOL complaint filed against them in 1981. This complaint was amended in 1984 to include violations between 1982 and 1984 and resulted in an additional $40,000 of liability. (Vol. 4, Tab 15; Tr. at 1940–1947). In sum, there is more than a preponderance of the evidence in the record to show that aggravating circumstances existed which precluded a finding of "unusual circumstances." Therefore, according to the regulations, petitioners cannot be relieved of the debarment sanction. *See A to Z*, 710 F.Supp. at 855.

### III.

### *Conclusion*

In sum, we conclude that respondents' findings of fact are supported by a preponderance of the evidence and their conclusions of law are not arbitrary or capricious.

We therefore GRANT respondents' motion for summary judgment. Accordingly, we DENY petitioners' motion for summary judgment. The petition is DISMISSED.

IT IS SO ORDERED.